Mr. Force, whenever you're ready. Good morning, Your Honors. David Force for the appellant. Getting right down to the nub, as suggested, I would say that there are two points that I'm depending on in this appeal. One is that there is sufficient evidence to take this case to a jury in the record of genuine issues of material fact that would allow a jury to conclude that some or all of the adverse employment actions undertaken against Mr. DeVico were, in the words of the Oregon statute, for the reason that he had engaged in the whistleblowing activity. What are the adverse employment actions that you're relying on? The primary ones are the, well, the most overt ones are the denial of the promotion and the termination itself. How do you deal, counsel, with the proximity issues in terms of timing? That's the thing that I'm concerned about. In the one instance you had five months elapsed between the firing and the reported violations to the FDA. Isn't that too long under Clark County? Well, Your Honor, if you look at that gap without reference to everything that happened in between, that may be too long in and of itself. I mean, it's not dispositive, obviously, but it may be too long to say just based on timing there's a causal relationship. But the activity starting with the demand that he present himself in North Carolina to disclose to the company absolutely everything that he had disclosed to the FDA happened in less than a month. What's wrong? You consider that an adverse employment action? No, I consider that to be a step that shows that this sequence of events was prompted by the disclosure and the knowledge by the employer that the disclosures had been made. See, that's the one part I have trouble with. Not that I'm in trouble by any parts of this case, but I just couldn't understand the logic of that to use the employer's exercise of its rights, as I understand it, to have the employees, if they're going to make external complaints like that, disclose. They didn't say don't do it. They weren't saying it's confidential, but we're entitled to know what you're accusing us of, and that's your obligation as an employee. Now, why can't they do that without it being then turned into retribution? Well, I'm not contending that they can't do that. What we contend is that if you look at the sequence of events, you can see that the ultimate disciplinary actions against Mr. DeVico were part of a pattern that only commenced when they knew of his disclosures. Well, I have a question about that piece of the timing because it's my recollection, and again, I may be wrong, but it's my recollection that some of the things that were problematic in your client's performance predated the June 2003 complaint. For example, there was a dinner that he charged for that was unauthorized, that had happened before that, and so in other words, it didn't appear to me that it was only afterwards that there were problems. And, Your Honor, that to me is evidence in favor of the plaintiff because all of these things that they claim had been going on for years that were defective performance didn't prevent them from giving him huge bonuses and never disciplining him until he made the disclosures, they learned of the disclosures, and then they go back retroactively and say, we should have fired you for this two years ago. To me, you know, I used to practice unemployment claims, and the employment hearings officers always took the position that if an employer had a reason to fire the employee for years but didn't until he had done something that was protected by, that didn't disqualify him from unemployment, that they wouldn't look back and say, well, now you're just doing what you could have done years ago. The inference that a reasonable fact finder including a reasonable jury can draw is if they had all of these reasons to discipline him ever since he became an employee but took no disciplinary action whatsoever until he made the disclosures that are protected by the Oregon statute that there is a causal relationship. Are you saying that the reasons that the employer gave under the second prong of McDonnell Douglas are not admissible, if you will, they're not legitimate because they happened a long time ago, or are you saying that was a pretext and that that nullifies legitimacy of the second prong? I'm saying that it's a pretext, but the reason we've contended from the outset that this Oregon statute shouldn't be interpreted through federal law is the fact that there's no question Mr. DeVico can't prove at this stage of the proceedings that these things were pretextual. What he can do is show there is a genuine issue of material fact, which if this case were tried in an Oregon court under the Oregon statute would preclude him from being defeated on a guillotine. But we're wrestling with diversity here and we deal under the McDonnell Douglas framework, do we not? Well, the McDonnell Douglas framework applies to cases under Title VII and other cases where this court, not the Oregon District Court, but where this court has said we're going to apply this to an identical or mirror image kind of state statute. There is no statute like this federal statute. There's no reason to believe that if there were, the federal courts would necessarily apply a McDonnell Douglas framework to that statute. Let me ask you this. It seems to me that, well, being a whistleblower doesn't insulate a person from legitimate discipline. If they've done something bad. And there were certainly some things that seemed objectively problematic, like the incident at the hotel where there was this complaint made. Are you arguing that those things didn't happen or just that they were not really the real reason for the disciplinary actions? It's both, depending on which incident you're talking about. As to the matter at the hotel, the only evidence of that, that that occurred, is a letter to the attorneys for the defendant from a person who worked at that hotel who said that somebody else told them that happened. And that's supposed to be confident evidence that the event occurred when the plaintiff denies in a sworn declaration that it did. What was your response to that in your counter? I moved to strike it. And what did the district court do? Didn't strike it and, in fact, made a finding that it had occurred. Okay. And on what basis did the district court find other than what you indicated? The way you've described it, it sounds like it was kind of quadruple hearsay. It was. And there was no basis for even crediting it at all. You just think the district court was just completely off the wall on that? Well, the district court did not make any mention of the objection in its written opinion and, in fact, said that this event had occurred, found as a fact that it had occurred. You have about a minute left. I'd like to save it if I could. Thank you. We'll hear from Mr. Williamson. Good morning, Your Honors. Thomas Williamson for the defendant appellee, GlaxoSmithKline. Just to set the record straight or try to set it a little bit straighter on this pattern of misconduct by Mr. DeVico because we think it is important for this issue of pretext. As Judge Graber pointed out, this is a pattern that had started much earlier than June of 2003. Indeed, there are admissions in the deposition testimony of Mr. DeVico talking in September of 2002 and November of 2002 about how he's being singled out for heightened scrutiny in connection with his failure to comply with the revised company policies and practices for how sales representatives should behave. So we think on this causation issue, the evidence is really undisputed and clear that the pattern of heightened scrutiny was not generated by the complaint that became known to management in June of 2003, but it was by this persistent pattern of misconduct by the appellant, Mr. DeVico. Mr. Williamson, is there any legal basis for opposing counsel's position that if a pattern of conduct has been occurring over a period of time and the employer does nothing until it wants to terminate basically and it wants to avoid problems with the pretext allegations, that somehow the ongoing previous pattern is illegitimized by failure to call it at an earlier point? Is there any basis in that under case law that you're aware of? Not aware of any case law. Moreover, Your Honor, we think it's a confusing or inaccurate characterization of the record to say that nothing was done before. Again, as I said, there are admissions by the plaintiff that there were repeated instances where his misconduct was pointed out and he was told that if you do that again, you could be subject to termination. Was that in the employee record? Does that show up in the record anywhere that it was dotted down and put in his employee file? Whether it was put in an employee file, I can't say off the top of my head, Your Honor, but in the record there were e-mails that were sent to him and e-mails that he referenced complaining that he was being held accountable. He said, you know, you're trying to set me up to be terminated. This was at an earlier point than? This is earlier than the June 15 date when the employer became aware of the complaints. How long before, Mr. Williamson, are we talking about? I'm sorry, Your Honor. I'm just saying that from the termination date, how far back are we talking about? In the record of this case, we're talking about incidents that went back to December of 2001. There was a hair appointment that he paid for to try and get some more business for GSK. Would you respond also concerning the question about the hotel incident? I was under the impression, perhaps mistaken, that there was a letter directly from the hotel to your client complaining of the plaintiff's behavior. Yes, Your Honor. The Post and Counsel may have inadvertently misstated the nature of that correspondence. It's a letter to Mr. Jim Lamb, who's not a lawyer. He's the regional vice president of FlaxoSmithKline, who's responsible for the area where Mr. DeVico worked. And it's from Sandra Ward, the director of meetings and conventions, from the Atlanta hotel. The page I have in this notebook, I don't have the SCR reference, but I think I can get your reference if you need that. But what we think is particularly... Thank you, Your Honor. What is really material and relevant here, though, is the plaintiff or the appellant has said, Oh, this is total fabrication, all this that happened. But even if it were, it's reasonable for Mr. Lamb, when he's getting a letter from the letterhead from the hotel, from someone who has no apparent connection or animus toward Mr. DeVico, for the company to believe that Mr. DeVico misbehaved himself. And he was later counseled or subject to a reprimand about that during that period, and either it was in September or October of 2003. Now, we thought the central issue we're going to be talking about here was whether McDonnell-Douglas is a procedural or substantive rule here. If nobody's arguing that, then we're quite comfortable with the position that it should be treated as a procedural rule and that in a diversity case, the federal courts apply federal procedural rules. Well, since you've prepared so well for that issue, we wouldn't want that to go to waste. But opposing counsel implies without stating what should take its place, I suppose, but implication is that somehow there is an Oregon, relying on the Oregon statute, that the McDonnell-Douglas three-part framework doesn't apply. Do you know what he's talking about, and why don't you agree with it? I think I know what he's talking about. I think in Oregon, the Oregon procedure does not include the three-part McDonnell-Douglas analysis. But the point that this court, the Ninth Circuit made in Snead, is that the issue is whether the – you need to assess, is this a procedural or a substantive rule? As I said, if that's settled, I don't want to do anything to unravel the view on that. The Supreme Court has characterized it as a procedural rule. And, of course, in Snead, the test that was used was whether using McDonnell-Douglas would be outcome determinative. And the court pointed out that it's a rule for allocating the burden of going forward. It's not a rule that changes the substantive law. The effect that it has is it gives the federal courts the flexibility under the federal rules, Rule 56, to decide that a case where the evidence is going to be insufficient to meet sort of the threshold requirements for going forward can be decided at the summary judgment stage instead of having to go through a trial or wait for a presentation of plaintiff's full case and then granting a motion for non-suit. Our position is that plaintiff is trying to argue that there should be a special category here for one type of Oregon employment-related case, the whistleblower type, where, in effect, when the federal district courts are hearing these cases in diversity, their hands would be tied. They wouldn't be able to use the summary judgment procedure. We don't see how that really fits with anything that is said and seen. And, moreover, as we pointed out to the court in the letter that we sent a week ago, the 28-J letter, district courts in Oregon have applied the McDonnell-Douglas framework in Oregon whistleblower cases before them. I think there was the Mageau case and the Parra case that we submitted to the court. That may exhaust the usefulness of my preparation. I don't have any more questions, so thank you, Counsel. Thank you very much, Your Honor. Mr. Forse, you have some time remaining. Thank you, Your Honor. And the appellant does contend that the effect of applying the McDonnell-Douglas test to this particular claim and whether it would be unique to this, I don't know. This is the case I had before. Let's probe that. Under your theory, applying Oregon law and Oregon procedure, what do you substitute in lieu of the first McDonnell prong? You have to show a prima facie case under Oregon law? Yes. Okay, so that's like McDonnell-Douglas. Does the burden then shift to the employer to come up with a business reason for termination? No. What happens under Oregon law? They can, if they wish, make an affirmative defense that the reason was something other than what the contention is. But they don't even have to do that. Under Oregon procedure, and I want to distinguish this from substance before I finish, but under Oregon procedure, it's always the plaintiff's burden. And so basically if you have the prima facie case and you have some evidence that there's a connection to the protected activity, you don't get a summary judgment. So your concern is not the ultimate case, but rather it can go to summary judgment. Exactly. Because you're, and I gather counsel, Mr. McWilliamson, said that as well. So your point is that you call it an affirmative defense. I don't know that that's a whole lot different than the second prong in McDonnell-Douglas. Is there any pretext aspect of Oregon law? No. It simply isn't. The plaintiff has to prove the case. But basically if you ignore Snead, basically this becomes very amorphous. Basically if you plead a prima facie case, it goes to trial. Is that basically what it boils down to? If there's any evidence of a causal connection and you plead a prima facie case, yes, it will go to trial. Does that, I'm sorry. Why don't you think that Snead is binding on this panel? Because this is not an equivalent case to Title, an equivalent statute to Title VII. It's an Oregon statute that recognizes the reality that the only way in most cases you're ever going to find proof of corporate wrongdoing is if employees of the corporation have the ability to be protected against, being retaliated against if they report it. And the statute therefore uses the words, prohibits any of these adverse employment actions that it lists for the reason that the employee has in good faith reported criminal activity. That means substantively that if a reason for the adverse employment action is the report of that criminal activity, the worker is protected. And he's not protected if you apply the McDonnell-Douglas test to summary judgment and say all we have to do is produce evidence of some other reason and we can fire him and therefore nobody whose employer is diverse in citizenship from the plaintiff in Oregon is protected against getting a term. But you can come back with pretext. And if your pretext argument is solid, you get your trial, don't you, under McDonnell-Douglas? Well, I mean that's the whole point of the pretext argument is that the plaintiff says, you know, the business says X, but that's humbug because of X, Y, and Z. And the trial judge says, you know, there's a tribal issue of fact here. And we tried to respond to the motion for summary judgment on that basis as well. And we believe that we produced competent evidence that it was a pretext. Thank you. Thank you. We appreciate the arguments of both counsel. This case is submitted for decision. We'll hear one more before we take our morning break, and that is Williford v. The City of Portland.
judges: Graber, Fisher, Smith